HEWLETT–PACKARD CO., as successor-in-interest of Compaq Computer, ACE Insurance S.A., as subrogee of Hewlett Packard Co., and as assignee of Air Express International USA, Inc. f/k/a Danzas AEI Intercontinental, Plaintiffs,

v.

BROTHER'S TRUCKING ENTERPRISES, INC., and Salem Logistics, Inc., Defendants.

No. 04–CIV–21798.

United States District Court, S.D. Florida, Miami Division.

June 16, 2005.

**1350**

David L. Mazaroli, New York City, Peter W. Fudali, Miami, FL, for Plaintiffs.

Alan G. Howarth, Suffield, CT; E. Elliott Harris, Miami., for Defendants.

### ORDER DENYING SALEM LOGISTICS, INC.'S MOTION FOR SUMMARY JUDGMENT

COOKE, District Judge.

**THIS CAUSE** came before the Court upon the Defendant, Salem Logistics, Inc.'s Motion for Summary Judgment [D.E. 43], filed May 17, 2005. The Court having reviewed the Motion and being otherwise advised of the premises, it is hereby

**ORDERED AND ADJUDGED** that Defendant Salem Logistics, Inc.'s Motion for Summary Judgment is **DENIED.**[1]

### I. Factual Background

On or about August 2, 2002, Plaintiff, Danzas AEI Intercontinental, contacted Defendant Salem Logistics, Inc., ("Salem" or "Defendant")[2] about a shipment originating in Los Angeles, California and destined for Miami, Florida. The parties negotiated the terms of a contract that provided for transportation from California to Miami. The parties did not contract for Salem to actually transport the goods from California to Miami, but for the Defendant to arrange to have the goods transported by a reputable motor carrier. Through an internet freight matching website, Salem selected Brothers Trucking Enterprises, Inc., ("Brothers") and arranged for Brothers to pick up the shipment in California and physically transport it to Miami, Florida. The shipment was scheduled to be picked up at the Danzas facility on August 2, 2002 and delivered to Danzas' facility in Miami, Florida, on August 5, 2002.

As arranged, Brothers arrived at the Danzas facility in Los Angeles as scheduled on August 2, 2002, to pick up the shipment. The shipment was loaded onto Brothers' trailer by Danzas personnel. Brothers' driver signed the master bill of laden, indicating receipt of the shipment.

Brothers departed from the facility in Los Angeles on August 2, 2002, with the shipment. On or about August 5, 2002, the drivers parked the tractor trailer carrying Danzas' shipment in a shopping center located at West 11th Ave. and West 28th Street, Hialeah, Florida, leaving the vehicle unattended. This location is apparently around the corner from the home of one of the drivers. According to the police report, on or about 7:00AM on Au-

---

**1.** The Plaintiffs alleged five (5) causes of action in their Complaint. In their Memorandum in Opposition to Defendant's Motion for Summary Judgment, the Plaintiffs concede that Count I (Bailment) and Count II (Conversion), do not apply to this Defendant.

**2.** A default having been entered against Brother's Trucking Enterprises, Inc., the Court's reference to the "Defendant" shall only refer to Defendant Salem Logistics, Inc.

gust 5, 2002, one of the drivers observed that the tractor trailer carrying the shipment, was missing from the West 11th Ave. and West 28th Street location. The driver contacted the Hialeah Police Department to report the tractor trailer had been stolen.

The tractor trailer was recovered by the Florida Highway Patrol, on August 7, 2002. The police have been unable to determine who stole the shipment and no part of the shipment, has been recovered.

## II. Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if it is one that might affect the outcome of the case. *See id.* The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those materials that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant satisfies this requirement, the burden shifts to the non-moving party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 584, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To meet this burden, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings." Fed.R.Civ.P. 56(e). Nor may the non-moving party rely on a mere scintilla of evidence supporting its position. *See Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990). Instead, for a court to find a genuine issue of material fact for trial, the non-moving party must establish, through the record presented to the court, that it is capable of providing evidence sufficient for a reasonable jury to return a verdict in its favor. *See Cohen v. United Am. Bank*, 83 F.3d 1347, 1349 (11th Cir.1996). When a court considers whether or not to enter summary judgment, it views all the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *See Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir.1993).

## III. Discussion

### A. There is Genuine Issue of Material Fact as to Whether Salem Logistics, Inc. Is a Motor Carrier or Broker

■ The primary issue for the Court is whether Salem is a motor carrier or a broker, as defined by the Carmack Amendment, 49 U.S.C. § 14706 *et seq.* The Carmack Amendment, a federal law that governs liability for loss, damage, or injury to property transported in interstate commerce, preempts state regulation of carrier liability. *Adams Express Co. v. Croninger*, 226 U.S. 491, 505, 33 S.Ct. 148, 57 L.Ed. 314 (1913); *Smith v. United Parcel Service*, 296 F.3d 1244 (11th Cir.2002). The Carmack Amendment governs carriers, not brokers.[3] 49 U.S.C. § 14706(a).

---

3. The Carmack Amendment defines "broker" as:

a person, other than a motor carrier, or an employee or agent of a motor carrier, that as a principal, or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, or arranging for, transportation by motor carrier for compensation.

49 U.S.C. § 13102(2). The statute defines "motor carrier" as " a person providing motor vehicle transportation for compensation."

As such, if Salem qualifies as a carrier, as defined by the Carmack Amendment, then the Plaintiffs' state law causes of action, are preempted. With that said, the Carmack Amendment cannot be read to displace all actions against entities against which it does not provide for liability. *See* 49 U.S.C. § 15103. ("the remedies . . . are in addition to remedies existing under another law, or common law").

 Whether a company is a broker or a carrier is not determined by what the company labels itself, but by how it represents itself to the world and its relationship to the shipper. *See Phoenix Assurance Co. v. Kmart Corp.*, 977 F.Supp. 319 (D.N.J.1997); *Custom Cartage, Inc. v. Motorola, Inc.*, 1999 U.S. Dist. LEXIS 16462. While it is clear that Salem could not be held liable as a broker under the Carmack Amendment, the Court finds that there is a genuine issue of material fact as to whether Salem acted as a broker or a motor carrier. The Defendant assured Danzas regarding its contingent insurance coverage and that of Brothers Trucking and it presented Danzas' insurance claim to Brothers Trucking. During their negotiations, Mr. Investor was advised that the cargo was to be driven by a team on a truck equipped with a GPS system, and that the truck was go directly to its destination. Olin Dep. at 82 and 109. The Defendant was hired to ensure that these requirements were met. Moreover, in a letter to Mr. Olin dated March 12, 2002, the Defendant's agent specifically states that "[t]he value added portion of what we do is to ***provide control, the very latest systems,*** transportation savings and information, all at no direct charge to our cus-

tomers." Mot. I n Opp. Ex. K(emphasis added). In an e-mail dated March 28, 2002, Mr. Invester advised representatives from Danzas and Salem that he wanted to provide Danzas with "REAL VALUE" and that they [Salem] could provide this through competitive pricing, ***consistent and timely transit*** times with quality carriers. *Id.* at Ex. L (emphasis added). In addition, Mr. Invester advises that he asks his teams to run an average of 50mph. *Id.* All of these facts suggest that Salem's actions were not limited to arranging transport, but also exerting some measure of control over these drivers. Based on these facts, a reasonable factfinder could find that Salem served as "motor carrier," rather then a "broker." As such, summary judgment on the Plaintiff's Carmack Amendment claim, is inappropriate.

### B. Negligence

 In the event the factfinder finds that the Carmack Amendment does not apply to the Defendant, the Defendant may be held liable for the alleged negligent conduct. The determination as to whether the existence of a duty of care in a negligence action is a question of law. *See McCain v. Fla. Power Corp.*, 593 So.2d 500 (Fla.1992). "The duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader 'zone of risk' that poses a general threat of harm to others." *Id.* at 502. An actor's duty may arise from several sources: "(1) legislative enactments or administration regulations; (2) judicial interpretations of such enactments; (3) other judicial precedent; and (4) a duty arising from the

---

49 U.S.C. § 13102(3). The definition of transportation includes:

(A) a motor vehicle, . . . property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, regardless of ownership or an agreement concerning use; and

(B) services related to that movement, including arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and property.
49 U.S.C. § 13102(21).

general facts of the case." *Clay Elec. Co-op., Inc., v. Johnson*, 873 So.2d 1182, 1185 (Fla.2003)(quoting *McCain*, 593 So.2d at 503 n. 2). The Court finds that the instant matter falls squarely within the fourth category. Viewing the facts in the light most favorable the nonmoving party, the facts alleged demonstrate that the Defendant's failure to follow Danzas' specific instructions in procuring a team of premium drivers, with certain specified security requirements *e.g.*, GPS tracking, two-way radio communications, team drivers with one always in attendance at the vehicle, and direct point-to-point routing without unauthorized stopovers, created a foreseeable zone of risk, particularly in light of Mr. Invester's familiarity with Compaq loads. Had Salem followed these instructions, there would be no questions about the identity of the person accompanying the driver and the driver would never have left a truck load full of electronics, unattended in Hialeah, Florida, and the Plaintiffs and Salem would have had the ability to communicate with the drivers en route, if need be. Finally, had the Defendant conveyed the instructions to Brothers, the load might have been found, via the GPS tracking system. A reasonable factfinder might find that Salem failed to exercise due care the hiring of Brothers and in executing Danzas' instructions. As such, the negligence claim survives the Defendant's Motion for Summary Judgment.[4]

### C. Breach of Contract of Carriage

█ As discussed *supra*, even though the Defendant asserts that its only role

was that of a broker, there are genuine issues of material fact as to whether Salem assumed a greater role than that of merely arranging for transportation.

If a reasonable factfinder finds that the Defendant expanded its duties to include insuring delivery of the Plaintiffs' cargo, then the Defendant may be held liable for Breach of Contract of Carriage. Therefore, the Breach of Contract of Carriage claim survives the Defendant's Motion for Summary Judgment.

█

---

4. The proximate cause issue is generally a question of fact, reserved for the factfinder and is concerned with "whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury that actually occurred." *McCain*, 593 So.2d at 502; *see also Florida Power & Light Co. v. Periera*, 705 So.2d 1359, 1361 (Fla.1998). Salem cannot be held liable for damages suf-

fered by the Plaintiffs, "when some separate force or action is the active and efficient intervening cause" of the injury. *Gibson v. Avis Rent–A–Car Sys., Inc.*, 386 So.2d 520, 522 (Fla.1980). With that said, "[i]f an intervening cause is foreseeable the original negligent actor may still be held liable." *Id*. The question of whether an intervening cause is foreseeable is for the trier of fact. *Id*.