TAYLOR, J.
The plaintiff, Jorge Gonzales;, and his wife, Luz Gonzalez, appeal a final order granting the defendant’s motion for summary judgment and dismissing their negligence complaint with prejudice on the ground that the suit was barred by workers’ compensation immunity. We reverse, because there is a genuine issue of material fact as to whether the plaintiff was under a written contract “with a motor carrier,” and whether the plaintiff is thus excluded from the definition of “employee” under section 440.02(15)(d)4., Florida Statutes (2009).
This case arises out of a single-vehicle dump truck accident that injured the plaintiff, Jorge Gonzalez, at the ‘Winding Waters” construction project in September 2009. The defendant, J.W. Cheatham, LLC, was the general contractor for the construction project. Cheatham entered into a subcontract with Austin Tupler Trucking to provide earth moving services related to the Winding Waters project. Specifically, Austin Tupler agreed to furnish all supervision, labor, tools, equipment, materials and supplies necessary to haul fill from Winding Waters to the Palm Beach County Solid Waste Authority.
In March 2009, the plaintiff entered into a service contract in which he agreed to transport materials for Austin Tupler with his dump truck. The service contract identified Austin Tupler as a “broker” and identified the plaintiff as an “independent contractor.” The service contract indicated that Austin Tupler, as the “broker,” was “engaged in the business of arranging for the transportation by others of certain road building and construction and construction aggregates, and related commodities!;.]”
The service contract required the plaintiff to provide all equipment, maintain his vehicle at his own expense, pay for gasoline and fuel expenses, pay for all licensing and other governmental fees, and carry liability and cargo insurance. Austin Tu-pler paid the plaintiff on a commission basis, not on an hourly basis. The plaintiff had the discretion to choose the days of the week he wished to work, as well as the manner, means, routes and schedule for transporting a load or shipment.
On the date of the accident, the plaintiff was hauling a load of construction materials on the Winding Waters construction site. The plaintiffs dump truck overturned and' he sustained injuries. The plaintiff and his wife then filed suit against Cheatham, seeking damages for negligence and loss of consortium. Cheatham moved for summary judgment, asserting that the suit was barred by workers’ compensation immunity. Cheatham argued that because the plaintiff was an independent contractor working in the construction industry, the plaintiff qualified as Cheatham’s statutory employee. Cheatham further argued that Austin Tupler was a “broker,” not a “motor carrier,” and thus that the plaintiff did not fall within the “owner-operator” exclusion in section 440.02(15)(d)4., Florida Statutes (2009).
The trial court granted Cheatham’s motion for summary judgment, concluding as a matter of law that the plaintiff was a statutory employee of Cheatham and that workers’ compensation immunity barred the plaintiffs claim. Because the service contract between the plaintiff and Austin Tupler identified Austin Tupler as a “bro *944 ker” rather than a “motor carrier,” the trial court found that the plaintiff was not transporting property “under a written contract with a motor carrier” as required to qualify for the section 440.02(15)(d)4 exclusion from the definition of employee. Concluding that workers’ compensation immunity barred the lawsuit, the trial court dismissed the plaintiffs complaint with prejudice. This appeal ensued.
The standard of review of an order granting summary judgment is de novo. Fla. Atl. Univ. Bd. of Trs. v. Lindsey, 50 So.3d 1205, 1206 (Fla. 4th DCA 2010). When reviewing an order granting summary judgment, an appellate court must examine the record in the light most favorable to the non-moving party. Allenby & Assocs., Inc. v. Crown St. Vincent Ltd., 8 So.3d 1211, 1213 (Fla. 4th DCA 2009). “[T]he burden is upon the party moving for summary judgment to show conclusively the complete absence of any genuine issue of material fact.” Albelo v. S. Bell, 682 So.2d 1126, 1129 (Fla. 4th DCA 1996). A summary judgment should not be granted unless the facts are so crystallized that nothing remains but questions of law. Moore v. Morris, 475 So.2d 666, 668 (Fla.1985).
Under Florida’s Workers’ Compensation statute, the term “employee” includes an independent contractor working or performing sendees in the construction industry. § 440.02(15)(c)3., Fla. Stat. (2009). However, section 440.02(15)(d)4., Florida Statutes (2009),[1] provides that the term “employee” does not include:
An owner-operator of a motor vehicle who transports property under a written contract with a motor carrier which evidences a relationship by which the owner-operator assumes the responsibility of an employer for the performance of the contract, if the owner-operator is required to furnish motor vehicle equipment as identified in the written contract and the principal costs incidental to the performance of the contract, including, but not limited to, fuel and repairs, provided a motor carrier’s advance of costs to the owner-operator when a written contract evidences the owner-operator’s obligation to reimburse such advance shall be treated as the owner-operator furnishing such cost and the owner-operator is not paid by the hour or on some other time-measured basis.
The issue in this case turns on whether the plaintiff was under a written contract “with a motor carrier,” as it is undisputed that the plaintiff otherwise meets the necessary elements for owner-operator status. Cf. Reynolds v. CSR Rinker Transport, 31 So.3d 268, 270 (Fla. 1st DCA 2010) (setting forth five-part test for owner-operator status).
As used in the Florida Statutes, the term “motor carrier” generally means “any person owning, controlling, operating, or managing any motor vehicle used to transport persons or property over any public highway.” § 320.01(33), Fla. Stat. (2009). Similarly, federal law defines a “motor carrier” as “a person providing motor vehicle transportation for compensation.” 49 U.S.C. § 13102(14) (2009).
The Florida Statutes do not define the term “broker” in this context. However, federal law defines a “broker” as “a per *945 son, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation.” 49 U.S.C. § 13102(2) (2009).
Moreover, the Code of Federal Regulations expands upon the definition of the term “broker”:
Broker means a person who, for compensation, arranges or offers to arrange the transportation of property by an authorized motor carrier. A motor carrier, or person who is an employee or bona fide agent of a carrier, is not a broker within the meaning of this section when it arranges or offers to arrange the transportation of shipments which it is authorized to transport and which it has accepted and legally bound itself to transport.
49 C.F.R. § 386.2 (2009) (emphasis added).
The parties argue over whether federal law is relevant in determining the meaning of the term “motor carrier” under section 440.02(15)(d)4., Florida Statutes (2009). In our view, any distinctions between the federal and state law definitions do not affect the result in this case. We will therefore assume, without deciding, that federal law is relevant in determining whether Austin Tupler was acting as a motor carrier.
Under federal law, “[a] transportation entity may have authority to operate as both a broker and a carrier.” Schramm v. Foster, 341 F.Supp.2d 536, 549 (D.Md.2004). However, the dispositive issue is whether, in the specific transaction at issue, the entity “chose to use its carrier authority to ship the load or chose to simply broker the shipment to another authorized carrier.” Id. at 550. “[I]f [an entity] accepted responsibility for ensuring delivery of the goods, regardless of who actually transported them, then [the entity] qualifies as a carrier. If however [the entity] merely agreed to locate and hire a third party to transport the [goods], then it was acting as a broker.” CGU Int’l. Ins., PLC v. Keystone Lines Corp., 2004 WL 1047982 (N.D.Cal. May 5, 2004).
“Whether a company is a broker or a carrier is not determined by what the company labels itself, but by how it represents itself to the world and its relationship to the shipper.” Hewlett-Packard Co. v. Brother’s Trucking Enters., Inc., 373 F.Supp.2d 1349, 1352 (S.D.Fla.2005). Because the difference between a carrier and a broker is often blurry, the carrier/broker inquiry is inherently fact-intensive and not well-suited to summary judgment. Nipponkoa Ins. Co. v. C.H. Robinson Worldwide, 2011 WL 671747 (S.D.N.Y.2011). Thus, courts frequently conclude that there are issues of fact as to whether an entity is a carrier. Id. at *5.
In Hewlett-Packard, for example, the federal district court denied the defendant’s motion for summary judgment on the plaintiffs Carmack claim where the defendant not only arranged for transportation, but also exerted some measure of control over the drivers. 373 F.Supp.2d at 1352.
In Schramm, by contrast, the relevant defendant, CHR, had contracted with a carrier to haul a load of goods for a third party, and the tractor driver, an employee of the carrier, was in an accident that injured others. 341 F.Supp.2d at 540-42. The federal district court entered summary judgment in favor of defendant CHR on the plaintiffs’ claims under the Motor Carrier Act, finding that, in the transaction at issue, CHR was functioning as a broker rather than a carrier. Id. at 547-50, 553. The court reasoned there was no *946 evidence that CHR conveyed to the shipper that it would be transporting the load itself or that it engaged in anything other than “selling, providing, or arranging for, transportation by motor carrier for compensation.” Id. at 550.
Here, there is a genuine issue of material fact regarding whether Austin Tupler was a “motor carrier.” While Austin Tupler did not own or operate the dump truck involved in the accident, there is a genuine issue of material fact regarding whether Austin Tupler controlled or managed the motor vehicles used to transport the fill from the construction site. Glen Tupler, the president of Austin Tu-pler, testified that Austin Tupler is licensed as a motor carrier by the U.S. Department of Transportation. That Austin Tupler labeled itself as a “broker” in its contract with the plaintiff is not disposi-tive. Indeed, review of the contract between Cheatham and Austin Tupler shows that the contract contemplated far more than Austin Tupler merely agreeing to locate and hire a third party to transport the fill.
Unlike in Schramm, where the broker was merely arranging for transportation by a motor carrier, here Austin Tupler’s contract with Cheatham specifically required that Austin Tupler “Haul fill from Winding Waters Natural Area Wetland Creation to Palm Beach County Solid Waste Authority located on Jog Road North of 45th Street.” Austin Tupler further agreed to “provide sufficient trucks to haul an average of 250 loads per day” of fill from the Winding Waters construction site and to furnish all supervision, labor, tools, equipment, materials and supplies necessary. Although Austin Tupler contracted with independent owner-operators, such as the plaintiff, to truck the materials, Austin Tupler’s contract with Cheatham clearly contemplated that Austin Tupler would be supervising the job. At the Winding Waters project, there were between fifteen and twenty-five trucks hauling fill on a daily basis. Glen Tupler testified that he was personally present on the job site and that he was there in the following capacity: “I went to check out the loading and the dumping of the job a few times while we ran the job.” (Emphasis added). This was, at a minimum, sufficient record evidence to create a genuine issue of material fact as to whether Austin Tupler was “controlling” or “managing” the trucks used to transport fill from the construction site so as to qualify as a motor carrier within the meaning of section 440.02(15)(d)4., Florida Statutes (2009).
In sum, because there is a genuine issue of material fact as to whether the plaintiff was under a written contract “with a motor carrier,” see § 440.02(15)(d)4., Fla. Stat. (2009), we reverse the order on appeal and remand for further proceedings.

Reversed.

MAY, C.J., and GERBER, J., concur.

. The structure of section 440.02(15) suggests that section 440.02(15)(d) excludes individuals from the definition of "employee” even if they would otherwise be included in the definition of "employee” under section 440.02(15)(c). Accordingly, even if an individual is an independent contractor working in the construction industry, the individual is not an "employee” if the requirements of section 440.02(15)(d)4., Florida Statutes (2009), are satisfied.