SUAREZ, J.
The appellant, Apex Capital, LP (“Apex”), appeals the entry of final sum *96 mary judgment in favor of the appellee, Carnival Corporation (“Carnival”), in Apex’s action to collect freight charges allegedly owed to its assignor, Dash Logistics, Inc. (“Dash”), for transportation of several shipments on Carnival’s behalf. We affirm.
I. FACTS
In 2009, Carnival and United Freight Express (“UFE”) executed a contract (the “Agreement”) to transport multiple shipments of cargo and freight commodities. Pursuant to this Agreement, Carnival would pay UFE for freight charges incurred in the transport. The Agreement permitted UFE to subcontract its contractual duties but bound any subcontractor to the Agreement as a UFE employee. Additionally, any shipment tendered pursuant to the Agreement was deemed tendered to UFE as motor carrier and subject to the Agreement. UFE also assumed responsibility for all claims liability and payments and agreed to indemnify and hold harmless Carnival. It remained liable even if it chose to subcontract.
In January 2010, Carnival tendered several shipments for transport pursuant to the Agreement. Dash ultimately carried seven of these shipments pursuant to an agreement with United Freight Brokerage Corporation (“United Freight Brokerage”). The bills of lading were issued on UFE letterhead but did not specify the carrier. Dash received the shipments at their point of origin and its representative signed the bills as driver. Dash then delivered the freight to Carnival, which signed the bills of lading acknowledging receipt in good condition. The only record evidence of Dash’s agreement with United Freight Brokerage is the Rate Confirmation Sheet it issued to Dash. Dash ultimately assigned its interest to Apex, which invoiced United Freight Brokerage for the shipments. Pursuant to the Agreement, UFE also invoiced Carnival for each shipment. Carnival, in turn, issued timely payment to UFE. However, neither UFE nor United Freight Brokerage issued payment to Apex.[1] As a result, Apex forwarded its invoices to Carnival as shipper/consignee. When Carnival did not issue payment, Apex filed the underlying action against Carnival and United Freight Brokerage.
Carnival ultimately moved for summary judgment, alleging the Agreement with UFE relieved it of any obligation to pay freight charges to the actual carrier. The trial court denied the motion and Carnival moved for reconsideration. Apex filed a response and a cross-motion for summary judgment. The trial court ultimately denied Apex’s motion and, without making any findings of fact, granted summary judgment in favor of Carnival. Apex filed this appeal following the dismissal with prejudice of its claims against Carnival.
II. ANALYSIS
The bill of lading is the basic contract between the shipper and the carrier, and its terms and conditions bind the shipper and all connecting carriers. S. Pac. Transp. Co. v. Commercial Metals Co., 456 U.S. 336, 342, 102 S.Ct. 1815, 72 L.Ed.2d 114 (1982). It can serve as both a receipt and contract for the transport of goods. King Ocean C. Amer. v. Precision Cutting Servs., 717 So.2d 507, 510 (Fla.1998). Under the uniform bill of lading, the shipper remains primarily liable for freight charges unless the parties provide otherwise on the bill of lading or by separate agreement. See S. Pac. Transp. Co., *97 456 U.S. at 343, 102 S.Ct. 1815. Carnival alleges it contracted UFE as a carrier and conditioned its use of subcontracting carriers on their consent to the Agreement. It thus contends Dash was merely a sub-carrier subject to the terms of the Agreement and that the bill of lading served merely as a receipt. Apex, however, alleges Dash was never bound to the Agreement. Accordingly, it urges this Court to treat the bills of lading as contracts for carriage rendering Carnival liable for the freight charges. Apex claims UFE acted merely as a broker or freight forwarder[2] insofar as it did not receive, transport, or deliver the shipments. As such, Apex contends Carnival must bear the loss for UFE’s failure to transfer to Apex the freight charges Carnival paid to UFE. See Nat’l Shipping Co. of Saudi Arabia v. Omni Lines, Inc., 106 F.3d 1544, 1546-47 (11th Cir.1997) (holding shipper liable for double payment where shipper paid freight charges to freight forwarder but forwarder did not pay carrier).[3]
We conclude Dash, now succeeded by Apex, was not bound by the Agreement between Carnival and UFE. Apex has provided an affidavit from Dash stating it neither knew of the Agreement nor consented to its terms. Carnival has not refuted this allegation. The question, then, becomes whether the bills of lading constituted contracts for carriage that subject Carnival to liability for double payment.
Interpreting a bill of lading presents a question of law governed by the standards applicable to contractual disputes. EF Operating Corp. v. Amer. Bldgs., 993 F.2d 1046, 1050 (3d Cir.1993). Where a carrier signs a bill of lading upon receipt, the court must review its terms to determine whether the parties intended for the bill to serve as a contract for carriage. In re Modern Bldg. Materials, Inc. Ch. 128 Receivership, 281 Wis.2d 275, 697 N.W.2d 90, 286 n. 7 (2005). The bills of lading at issue here do not explicitly identify the carrier. However, they are issued on UFE letterhead. More importantly, although Dash’s drivers signed the bills, Dash is not identified anywhere on the documents. The driver’s signature alone is insufficient to create an enforceable contract between Carnival and Dash regarding payment of freight charges. See Norfolk S. Ry. Co. v. Groves, 586 F.3d 1273, 1281 (11th Cir.2009) (noting that a bill of lading, like any contractual relationship, requires a meeting of the minds on all essential terms and obligations).[4]
*98 We thus conclude the bills of lading served merely as receipts and do not constitute actionable contracts for carriage between Dash and Carnival. Regrettably, this dispute falls into the category of cases where “one of two innocent parties will be the loser.” Jackson Rapid, Delivery Serv., Inc. v. Thomson Consumer Elecs., Inc., 210 F.Supp.2d 949, 953 (N.D.Ill.2001). Because the bills of lading did not create privity of contract between Dash and Carnival, Apex must bear the loss.
III. CONCLUSION
For the foregoing reasons, we affirm the entry of final summary judgment in favor of Carnival and the denial of Apex’s summary judgment motion.

. Although Apex ultimately obtained a default judgment against United Freight Brokerage, both United Freight Brokerage and UFE have since dissolved.

. A motor carrier is defined as "a person providing motor vehicle transportation for compensation.” 49 U.S.C. § 13102(14) (2008). By contrast, a freight forwarder "plays a role in the assembly, consolidation, break bulk and distribution of shipments, assumes responsibility for the shipment from the place of receipt to the place of destination, uses carriers subject to ICC jurisdiction and may act as a carrier.” Transp. Revenue Mgmt., Inc. v. First NH Inv. Servs. Corp., 886 F.Supp. 884 (D.D.C.1995) (citing 49 U.S.C. § 10102(9) (1994)).

. Apex focuses much of its brief on UFE's status as a carrier or broker. We note this is a fact-intensive question, as a party can qualify as a carrier where it accepts responsibility for transportation of goods regardless of who actually transports them. See Gonzalez v. J.W. Cheatham, LLC, 125 So.3d 942 2013 WL 2320804 (Fla. 4th DCA May 29, 2013). However, we decline to categorize UFE’s role in this transaction as its title is irrelevant to our decision.

.We also reject Apex's contention that Carnival was on notice of its liability to Dash by virtue of the labeling on Dash’s vehicles. The Agreement permits UFE to employ subcontractors. Therefore, the fact that a carrier other than UFE was transporting the goods did not necessarily put Carnival on notice that the carrier was not operating under the terms of the Agreement.