**Reversed and Remanded and Memorandum Opinion filed December 16, 2021.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-20-00354-CV

---

### LUCINA PATRICIA TRUJILLO, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF NATHANIEL ANDREW BOADO, DECEASED; AND IVAN RICARDO TRUJILLO, INDIVIDUALLY, Appellants

### V.

### WERNER ENTERPRISES, INC., Appellee

---

**On Appeal from the 22nd District Court
Hays County, Texas
Trial Court Cause No. 16-2646**

---

## M E M O R A N D U M   O P I N I O N

Appellants Lucina Patricia Trujillo, individually and as personal representative of the estate of Nathaniel Andrew Boado, deceased, and Ivan Ricardo Trujillo, individually (together, "Appellants"), sued appellee Werner Enterprises, Inc. ("Werner") following a fatal vehicle accident in Hays County. The trial court granted Werner's motion for summary judgment and Appellants

appealed. For the reasons below, we reverse the trial court's summary judgment and remand for further proceedings.[1]

## BACKGROUND

This case stems in part from Werner's business relationships with two separate entities: retail-chain Tractor Supply Company and Tejcek Enterprises, LLC, a freight-hauling carrier.

In 2005, Werner entered into a "Transportation Agreement" with Tractor Supply, under which Werner agreed to provide Tractor Supply with transportation for its inventory, store supplies, and equipment. The parties executed an "Addendum of Modification" in 2006, permitting Werner to "enlist the use of third-party carriers" to assist it in meeting Tractor Supply's transportation needs.

In 2015, Werner entered into a "Broker-Carrier Agreement" with Tejcek, stating that Werner would offer Tejcek certain shipments to transport on a "non-exclusive basis" for "various consignees and consignors". The parties also executed a "Trailer Interchange Agreement", which stated that Werner would interchange Werner-controlled trailers with Tejcek to facilitate the delivery of Werner-controlled freight.

Tejcek employed Hyland Meadors as a driver for its freight-hauling operation. On April 8, 2016, Meadors was driving southbound on Interstate 35 and hauling a Tractor Supply load in a Werner trailer. Driving at approximately 60 miles per hour, Meadors rear-ended a vehicle that was stopped in traffic. Two of the vehicle's occupants were seriously injured and one died.

---

[1] This case was transferred to this court from the Third Court of Appeals by Texas Supreme Court Transfer Order, Misc. Docket No. 20-9048. Because of the transfer, we must decide the case in accordance with the precedent of the Third Court of Appeals if our decision otherwise would have been inconsistent with that court's precedent. *See* Tex. R. App. P. 41.3.

Appellants sued Werner, Tejcek, and Meadors, asserting claims stemming from the accident.[2]  Appellants' theories of liability as to Werner were bifurcated: first, to the extent Werner was acting as a carrier for the Tractor Supply load, Werner was vicariously liable for Meadors' negligence.  Second, to the extent Werner was acting as a broker for the Tractor Supply load, Werner was negligent in hiring or retaining Tejcek.

On the eve of trial, Appellants filed a motion for partial summary judgment asserting that Werner was acting as a carrier for the Tractor Supply load.  Werner filed a motion for traditional summary judgment contending that (1) it was acting as a broker rather than a carrier, and (2) Appellants' claims against Werner in its role as a broker were preempted by federal law.

The trial court signed an order granting Werner's summary judgment motion that (1) dismissed all Appellants' claims, (2) denied Appellants' motion for summary judgment, and (3) dismissed Werner's cross-claims against Tejcek and Meadors, resulting in a final and appealable judgment.  The trial court concluded that (1) Werner was acting as a broker for the Tractor Supply load, and (2) Appellants' claims against Werner were therefore preempted by federal law.  Appellants timely appealed.

## ANALYSIS

On appeal, Appellants challenge both grounds adjudicated by the trial court's summary judgment:  Werner's status as a broker and the preemption of Appellants' claims.  Because we conclude the trial court erred in determining as a matter of law that Werner was acting as a broker for the Tractor Supply load, we reverse the trial court's summary judgment without reaching Appellants' second issue.

---

[2] Tejcek and Meadors are not parties to this appeal.

3

## I. Standard of Review and Governing Law

We review a trial court's ruling on a motion for summary judgment *de novo*. *Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 278 (Tex. 2018). To prevail on a traditional motion for summary judgment, the movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). In our review of a summary judgment, we consider all the evidence in the light most favorable to the non-moving party. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex. 2007) (per curiam).

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). The reviewing court should render the judgment that the trial court should have rendered. *See Myrad Props., Inc. v. LaSalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 753 (Tex. 2009).

The United States Code defines a "broker" as:

> [A] person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation.

49 U.S.C.A. § 13102(2). In contrast, a "motor carrier" is defined as "a person providing motor vehicle transportation for compensation." *Id*. § 13102(14).

The implementing regulation clarifies that these roles cannot be held

4

simultaneously with respect to a single load:[3]

> Broker means a person who, for compensation, arranges, or offers to arrange, the transportation of property by an authorized motor carrier. Motor carriers, or persons who are employees or bona fide agents of carriers, are not brokers within the meaning of this section when they arrange or offer to arrange the transportation of shipments which they are authorized to transport and which they have accepted and legally bound themselves to transport.

49 C.F.R. § 371.2(a). As this regulation states, a carrier cannot act as a broker with respect to a load (1) that it is authorized to transport, and (2) for which it has accepted and legally bound itself to transport. *Id.*

"The difference between a carrier and a broker is often blurry." *CEVA Logistics U.S., Inc. v. Acme Truck Line, Inc.*, No. 01-16-00482-CV, 2018 WL 6694606, at *5 (Tex. App.—Houston [1st Dist.] Dec. 20, 2018, no pet.) (mem. op.) (internal quotation omitted); *see also Essex Ins. Co. v. Barrett Moving & Storage, Inc.*, 885 F.3d 1292, 1300 (11th Cir. 2018) ("the line between 'providing' transportation and 'selling' transportation is a blurry one"). For this determination, courts look to "how the party acted during the 'specific transaction' at issue, which includes 'the understanding among the parties involved [and] consideration of how the entity held itself out.'" *Richwell Grp., Inc. v. Seneca Logistics Grp., LLC*, 425 F. Supp. 3d 57, 61 (D. Mass. 2019) (quoting *ASARCO LLC v. England Logistics Inc.*, 71 F. Supp. 3d 990, 998 (D. Ariz. 2014)).

Consistent with its statutory definition, courts have found that a party is a "carrier" in a specific transaction if it takes responsibility for the shipment — regardless of whether it performed the actual transportation or labeled itself as a broker. *Id.* (citing *Tryg Ins. v. C.H. Robinson Worldwide, Inc.*, 767 F. App'x 284,

---

[3] However, an entity may have authority to operate as both a broker and a carrier — it just cannot exercise this authority in the same transaction. *See Schramm v. Foster*, 341 F. Supp. 2d 536, 549 (D. Md. 2004).

287 (3d Cir. 2019); *Essex Ins. Co.*, 885 F.3d at 1302); *see also CEVA Logistics U.S., Inc.*, 2018 WL 6694606, at \*5 ("[t]his determination is not made based on what a party labels itself or if it is licensed as a broker or a carrier"). "[T]he operative inquiry is this: pursuant to the parties' agreement, with whom did the shipper entrust the cargo?" *Essex Ins. Co.*, 885 F.3d at 1302.

Because this is a case-specific, fact-intensive analysis, "summary judgment might not be appropriate in many cases." *Id*.; *see also Vanguard Graphics LLC v. Total Press Sales & Serv., LLC*, No. 3:18-CV-55, 2020 WL 6059872, at \*4 (N.D.N.Y. Oct. 13, 2020).

Two recent cases illustrate the type of evidence that creates a fact question on this issue and emphasize the importance of contractual language indicating the defendant managed or took responsibility for the transportation at issue. *See Vanguard Graphics LLC*, 2020 WL 6059872, at \*4-5; *Gonzalez v. J.W. Cheatham LLC*, 125 So.3d 942, 945-46 (Fla. Dist. Ct. App. 2013).

In *Vanguard*, the plaintiff sued the defendant after a printing press was damaged while en route to its destination. 2020 WL 6059872, at \*1. Denying in part the defendant's summary judgment motion, the court concluded there was a fact question regarding whether the defendant was acting as a carrier or broker for the underlying transaction. *Id*. at \*5. The defendant did not transport the press but instead "hired various shipping firms to do so", suggesting it was acting as a broker. *Id*. However, the parties' contract also vested the defendant with "general responsibility for coordinating the transportation of the Press to the United States, regardless of whether it actually moved it itself." *Id*. at \*4. By these representations, the court concluded the defendant "held itself out as a carrier by agreeing to transport the Press," thus giving rise to an issue of fact on the defendant's status. *Id*.

6

In *Gonzalez*, the plaintiff sued the defendant and its subcontractor following a dump truck accident.  125 So.3d at 943.  Reversing summary judgment, the appeals court concluded there was an issue of fact regarding whether the subcontractor was acting as a broker or a carrier.[4]  *Id.* at 943-44.  The subcontractor labeled itself as a "broker" in its agreement with the plaintiff; however, the subcontractor's agreement with the defendant also stated that the subcontractor would "furnish all supervision" for the job and manage the dump trucks involved. *Id.* at 946.  "This was, at a minimum, sufficient record evidence to create a genuine issue of material fact" on whether the subcontractor was acting as a broker or a carrier. *Id.*

## II.    Application

Here, the evidence gives rise to an issue of fact regarding whether Werner was acting as a broker or a carrier for the Tractor Supply load.

Werner's "Transportation Agreement" with Tractor Supply vested Werner with significant responsibility for completing the contracted-for transportation. The agreement defines Werner as the "Carrier" and states that Werner is authorized "to transport freight . . . and to lawfully furnish to [Tractor Supply] all of the transportation and related services provided for in this Agreement."  Werner also agreed to "furnish tractors and trailers necessary to perform its obligations under this Agreement" and "provide all personnel necessary to perform its obligations under this Agreement."  The agreement further states that:

---

[4] The Florida Court of Appeals analyzed this issue in the context of a Florida Workers' Compensation statute that employed the term "motor carrier".  *See id.* at 944-45.  For its determination, the court looked to the relevant federal statutes and other cases interpreting those statutes.  *See id.* at 945 ("In our view, any distinctions between the federal and state law definitions do not affect the result in this case.  We will therefore assume, without deciding, that federal law is relevant in determining whether [the subcontractor] was acting as a motor carrier.").

[Werner] shall perform the transportation services provided for in this Agreement as an independent contractor and ***shall have exclusive control and direction*** of the persons operating the equipment or otherwise engaged in these services. [Werner] ***assumes full responsibility*** for the acts and omissions of these persons . . . .

(emphasis added).

Werner and Tractor Supply subsequently executed an "Addendum of Modification", which permitted Werner to enlist third-party carriers to meet Tractor Supply's transportation needs. But the addendum did not discharge any of the responsibilities Werner accepted in the parties' original agreement; rather, the addendum states that Werner "shall remain responsible to [Tractor Supply] for full and proper performance of the Agreement" and that "[a]ll other provisions of the Agreement shall remain unchanged and of full force and effect".

Further, the bill of lading completed at the time Meadors picked up the Tractor Supply load lists Werner as the "Carrier".[5] *See CEVA Logistics U.S., Inc.*, 2018 WL 6694606, at \*6 (concluding the summary judgment evidence established the defendant was a "carrier" as a matter of law, the court noted that the bill of lading identified the defendant as such).

The record also contains evidence suggesting Werner was acting as a broker for the Tractor Supply load. The "Broker-Carrier Agreement" executed by Werner and Tejcek identifies Werner as the "Broker" and Tejcek as the "Carrier." The agreement states that Werner will offer to Tejcek "shipments for [Tejcek] to transport as a motor contract carrier" and that Tejcek "shall accept said shipments and perform the transportation service in a prompt, competent and efficient manner".

---

[5] "A bill of lading 'records that a carrier has received goods from the party that wishes to ship them, states the terms of carriage, and serves as evidence of the contract of carriage.'" *Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 561 U.S. 89, 94 (2010) (quoting *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 18-19 (2004)).

In his deposition testimony, Werner representative Matthew Perry said Werner was acting as a broker for the Tractor Supply load and that Tejcek was "the only motor carrier at the time of this particular accident." Similarly, Tejcek representative Dustin Tejcek testified that Tejcek (1) "was a carrier for Werner Enterprises through their brokerage department", and (2) was "100 percent liable" for transportation of the Tractor Supply load.

Considered together, this evidence gives rise to a genuine issue of fact regarding whether Werner was acting as a broker or a carrier for the Tractor Supply load. *See Essex Ins. Co.*, 885 F.3d at 1302; *Richwell Grp., Inc.*, 425 F. Supp. 3d at 61; *see also, e.g., Vanguard Graphics LLC*, 2020 WL 6059872, at *4-5; *Gonzalez*, 125 So.3d at 945-46.

We sustain Appellants' first issue and conclude the trial court erred by holding that, as a matter of law, Werner was acting as a broker in the underlying transaction. Because we reverse on this point, we need not reach Appellants' challenge to the trial court's secondary conclusion regarding preemption. *See* Tex. R. App. P. 47.1 ("The court of appeals must hand down a written opinion . . . that addresses every issue raised and necessary to final disposition of the appeal.").

## CONCLUSION

We reverse the trial court's March 24, 2020 final judgment granting Werner's summary judgment motion and remand the case to the trial court for further proceedings.

/s/    Meagan Hassan
Justice

Panel consists of Justices Wise, Spain, and Hassan.