[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-10774

_____

KATIA GAUTHIER,
Individually and as Administrator of the Estate of
Peter Gauthier, and as Parent and Natural Guardian
of minors, D.G. and N.G.,

Plaintiff-Appellant,

*versus*

HARD TO STOP LLC, et al.,

Defendants,

TOTAL QUALITY LOGISTICS, LLC,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 6:20-cv-00093-RSB-CLR

_____

Before WILLIAM PRYOR, Chief Judge, and JILL PRYOR and BRASHER, Circuit Judges.

PER CURIAM:

Peter Gauthier died when his car collided with a tractor trailer that was blocking traffic while its driver attempted a U-turn on a state highway at night. The driver of that tractor trailer was defendant Ronald Bernard Shingles; the owner of that tractor trailer was defendant Hard to Stop LLC. Katia Gauthier, Peter's widow and administrator of his estate, also named as a defendant Total Quality Logistics, LLC, the shipping broker that arranged for Shingles and Hard to Stop to haul a load that evening. Gauthier alleged that Total Quality Logistics, LLC was liable for Peter's death because under Georgia negligence law, Total Quality Logistics, LLC had a duty to "ensure that the motor carriers with whom it arranged transportation of goods were reasonably safe."

The district court concluded that Gauthier's negligent selection claim against Total Quality Logistics, LLC is preempted by a federal statute, the Federal Aviation Administration Authorization Act ("the Act"). The Act generally prohibits states from enacting or enforcing any law "related to a price, route, or service of any . . .

broker . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). The Act does preserve states' ability to exercise "safety regulatory authority . . . with respect to motor vehicles," however. *Id.* § 14501(c)(2)(A). The district court concluded that state common law negligence claims predicated upon a broker's selection of a shipping company or driver necessarily relate to a service of a broker and thus fall within the general preemption provision. The district court also concluded that although such claims arise from a state's safety regulatory authority, they do not relate to "motor vehicles," specifically, and therefore are not excepted from preemption.

After the district court's decision, we adopted the same reading of the Act in *Aspen American Insurance Company v. Landstar Ranger, Inc.* and held that the Act preempts state law claims against "a transportation broker" who was allegedly "negligent . . . in its selection of [a] carrier." 65 F.4th 1261, 1264 (11th Cir. 2023). There, the broker unwittingly selected "a thief posing as a [broker]-registered carrier" to haul an expensive load of cargo. *Id.* The shipper-client's insurance company sued the broker under a state common law theory of negligent selection. We first decided that such allegations fall within the scope of the Act's preemption provision because they are "related to a . . . service of [a] . . . broker . . . with respect to the transportation of property." *Id.* at 1266–68 (citation omitted). We then held that such claims are not preserved by the Act's exception allowing claims arising from "the safety regulatory authority of a State with respect to motor vehicles." *Id.* at 1268–72 (citation omitted). We acknowledged that common law negligence

claims are generally within a state's "safety regulatory authority." *Id.* at 1268–70 (citation omitted). But, we continued, "the phrase 'with respect to motor vehicles' limits the safety exception's application to state laws that have a *direct* relationship to motor vehicles." *Id.* at 1271. And, we concluded, "a claim against a broker is necessarily one step removed from a 'motor vehicle' because . . . 'a broker . . . and the services it provides have no direct connection to motor vehicles.'" *Id.* at 1272 (quoting *Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016, 1031 (9th Cir. 2020) (Fernandez, J., concurring in part and dissenting in part)). "Because [a] negligent [selection] claim seeks to impose a duty on the service of the broker rather than regulate motor vehicles . . . the exception does not apply." *Id.* (quoting *Creagan v. Wal-Mart Transp., LLC*, 354 F. Supp. 3d 808, 814 (N.D. Ohio 2018)).

Gauthier's negligent selection claim is foreclosed by our holding in *Aspen*, which the district court's reasoning in this case presaged. Her allegations—that Total Quality Logistics, LLC failed to exercise due care under state law when it assigned the shipment to Shingles and Hard to Stop—are materially indistinguishable from the claim in *Aspen*. *See* 65 F.4th at 1264, 1266–68. Gauthier's claim thus falls within the Act's preemptive scope. *See id.* at 1266–68; 49 U.S.C. § 14501(c)(1). Likewise, her claim "against a broker" is "necessarily one step removed from a 'motor vehicle,'" *Aspen*, 65 F.4th at 1272, and thus not preserved from preemption by Section 14501(c)(2)(A).

Gauthier resists this outcome. She first argues that her claim here does not implicate the "service of any . . . broker . . . with respect to the transportation of property," 49 U.S.C. § 14501(c)(1), because the Georgia common law is "applicable to the general public." Appellant's Supp. Br. 4–5. We acknowledged in *Aspen* that the Act "does not preempt 'general' state laws (like a 'prohibition on smoking in certain public places') that regulate brokers 'only in their capacity as members of the public.'" 65 F.4th at 1268 (quoting *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 375 (2008)). Although Georgia common law, broadly speaking, is generally applicable, her specific claim here is certainly not. Members of the public do not arrange for the motor transportation of property; brokers do. By regulating that specific activity, Gauthier's common law claim is aimed solely at "the performance of [brokers'] core transportation-related services." *Id.*

Gauthier also contends that cases arising from traffic accidents (like this one) should be treated differently than cases arising from property loss (like *Aspen*). But the nature of the injury is not what matters for purposes of the Act's preemption provision. Any claim that a broker negligently selected a driver to haul a load of property clearly falls within Section 14501(c)(1) because, as just noted, that claim seeks to regulate the broker's "performance of [its] core transportation-related services." *Id.* And such claims do not arise from an exercise of "the safety regulatory authority of a State with respect to motor vehicles," 49 U.S.C. § 14501(c)(2)(A), which requires that the relevant state law "have a *direct* relationship to motor vehicles," *Aspen*, 65 F.4th at 1271. We made that clear in

*Aspen* by holding that negligent-selection-of-broker claims *necessarily* lack a direct relationship because "the services [a broker] provides have no direct connection to motor vehicles." *Id.* at 1272 (quoting *Miller*, 976 F.3d at 1031 (Fernandez, J., concurring in part and dissenting in part)). Our holding in *Aspen* that a challenge to a broker's front-end selection of a motor carrier is preempted in no way turned on the back-end injury suffered as a result of the allegedly negligent selection.

Finally, Gauthier argues that *Aspen* was wrongly decided. She says that we erred in concluding that the Act requires a "direct" connection between the relevant state law and motor vehicles. But, as Gauthier correctly notes, *Aspen* is binding. *See United States v. Dubois*, 94 F.4th 1284, 1293 (11th Cir. 2024) ("[A] prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc*." (citation omitted)). We, therefore, must follow it here.

The judgment of the district court is **AFFIRMED**.