DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

LYNN JOSEPH SIMON, JR., as personal representative of the
Estate of Matthew Joseph Simon, deceased,

Appellant,

v.

COYOTE LOGISTICS, LLC; ANHEUSER-BUSCH COMPANIES, LLC;
JOSE M. NIEVEROLDAN; IRIZARRY RIVERA; ANEPHNA
TRANSPORT, INC.; and FAISAN TRANSPORT CORP.,

Appellees.

No. 2D2023-2775
_____

October 22, 2025

Appeal from the Circuit Court for Sarasota County; Hunter W. Carroll,
Judge.

Bryan S. Gowdy and Nicholas P. McNamara of Creed & Gowdy, P.A.,
Jacksonville; and Joseph V. Camerlengo of The Truck Accident Law
Firm, Jacksonville, for Appellant.

Joseph H. Lang, Jr., of Carlton Fields, P.A., Tampa; and Jeffrey A. Cohen
and Katarina Dobsinska of Carlton Fields, P.A., Miami, for Appellee
Coyote Logistics, LLC.

No appearance for remaining Appellees.

Thomas J. Seider of Brannock Berman & Seider, Tampa, for Amicus
Curiae The Institute for Safer Trucking.

Todd C. Rubenstein of Taylor Nelson PL, Winter Haven; and Bradley A. Bertkau and Sophia M. Rago of Canty Novy Bertkau Gordon, LLC, Chicago, Illinois, for Amicus Curiae Leading Industry Freight Brokers.

SILBERMAN, Judge.

Lynn Joseph Simon, Jr., as personal representative of the Estate of Matthew Joseph Simon, deceased ("the Estate"), appeals the final judgment entered against him and the order granting Coyote Logistics, LLC's ("Coyote") motion for final summary judgment as to counts seven and eight of the Estate's first amended complaint. The trial court granted summary judgment based on its findings that the Estate's claims were preempted by the Federal Aviation Administration Authorization Act ("the FAAAA"), 49 U.S.C. § 14501 (2017), and that the FAAAA's safety exception does not save the claims from preemption.

Because the Estate's claims against Coyote implicate the "safety regulatory authority of a State with respect to motor vehicles," the safety exception protects the Estate's claims from federal preemption. Thus, we reverse the order granting Coyote's motion for final summary judgment and the final judgment. We remand for further proceedings.

## I.    Factual Background

The Estate filed suit against Coyote and others after Matthew Joseph Simon died in a fiery tractor-trailer crash. In its first amended complaint, the Estate alleged that Matthew's vehicle collided with a tractor-trailer that was hauling beer from Jacksonville to Fort Myers. The tractor-trailer was traveling less than thirty miles per hour in a seventy miles per hour speed zone and lacked operable safety equipment including taillights, marker lights, and brake lights and had ineffective and missing conspicuity tape. Anheuser-Busch Companies, LLC, contracted with Coyote, a licensed broker, to arrange for the

2

transportation of the load of beer. Coyote then entered into an agreement with Anephna Transport, Inc. (the "motor carrier"), to transport and deliver the load.

Relevant to this appeal are counts seven and eight of the first amended complaint. Both counts are based on the negligent maintenance and operation of the tractor-trailer controlled by the motor carrier. In count seven, the Estate alleged that Coyote negligently selected the motor carrier and that negligence caused Matthew's death. In count eight, it alleged that Coyote had a right to control the motor carrier and thus was vicariously liable for the motor carrier's negligence.

The Estate alleged that Coyote breached a duty owed to the public to exercise reasonable care when selecting a motor carrier by retaining "an incompetent, unfit, inexperienced motor carrier with unsafe equipment and inadequate drivers." Further, the Estate alleged that Coyote's role in this transaction was not merely to arrange for the transportation but that it instead controlled other aspects of the transport; specifically that Coyote "acted as, contracted for, and was listed on the bill of lading as the motor carrier of the Load[; and] arranged for, controlled, and had the right to control[] all of the transportation of the Load."

Coyote moved for summary judgment arguing that the FAAAA preempted the Estate's claims against it or, in the alternative, that the claims failed on the merits. The Estate argued that its claims were not preempted or that if the claims fell within the FAAAA's preemption clause, they are saved by the FAAAA's safety exception. Following a hearing on the motion, the trial court entered an order granting summary judgment in favor of Coyote. The court found that § 14501(c)(1) of the FAAAA preempted the Estate's claims because

3

"[a]llowing claims for negligent selection or vicarious liability would defeat Congress' intent for preemption." The court also found that the safety exception does not apply to brokers. Based on these findings, the court entered a final judgment against the Estate concluding all claims against Coyote, leading to this appeal. Because the court resolved the motion on preemption alone, it did not reach the merits of the Estate's case.

## II. The FAAAA

The FAAAA was enacted in 1994 "as part of a greater push to deregulate interstate transportation industries." *Ye v. GlobalTranz Enters., Inc.*, 74 F.4th 453, 457 (7th Cir. 2023), *cert. denied*, 144 S.Ct. 564 (2024). It includes "several provisions barring . . . burdensome state regulations" after Congress found "that state governance of intrastate transportation of property had become 'unreasonably burden[some]' to 'free trade, interstate commerce, and American consumers.' " *Id.* (second alteration in original) (quoting *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 256 (2013)). Its goal was to "as completely as possible level the playing field between air carriers on the one hand and motor carriers on the other with respect to intrastate economic trucking regulation." *Joe Nagy Towing, Inc. v. Lawless*, 101 So. 3d 868, 875-76 (Fla. 2d DCA 2012) (quoting H.R. Conf. Rep. No. 103-677 at 82 (1994)).

The FAAAA contains an express preemption clause providing that "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any . . . broker . . . with respect to the transportation of property." § 14501(c)(1). The preemptive scope of the FAAAA is not unlimited; instead, "the state laws whose 'effect' is 'forbidden' under federal law are those with a '*significant* impact.' " *Joe Nagy Towing*, 101 So. 3d at 876 (quoting *Rowe v. N.H. Motor Trans. Ass'n*, 552 U.S. 364, 375 (2008)).

4

Notably, § 14501(c)(1) of the FAAAA "shall not restrict the safety regulatory authority of a State with respect to motor vehicles." § 14501(c)(2). This safety exception "exempts certain measures from its preemptive scope, including state laws regulating motor vehicle safety." *Dan's City Used Cars*, 569 U.S. at 256.

"The domestic trucking industry consists of several players, including the shipper, the broker, and the motor carrier." *Aspen Am. Ins. Co. v. Landstar Ranger, Inc.*, 65 F.4th 1261, 1264 (11th Cir. 2023). Relevant to this appeal are only the broker—Coyote—and the motor carrier. The motor carrier transports goods from the shipper to the purchaser, and the broker connects the shipper and the carrier by "act[ing] as the middleman between the two to arrange for the transportation of the shipper's goods by the carrier by, for instance, negotiating rates and routes." *Id.* at 1264-65. But "the difference between a carrier and a broker is often blurry, [and] the carrier/broker inquiry is inherently fact-intensive and not well-suited to summary judgment." *Gonzalez v. J.W. Cheatham LLC*, 125 So. 3d 942, 945 (Fla. 4th DCA 2013) (citing *Nipponkoa Ins. Co. v. C.H. Robinson Worldwide*, No. 09 Civ. 2365, 2011 WL 671747 (S.D. N.Y. 2011)); *see also XPO Logistics, LLC v. Charles*, 394 So. 3d 206, 207 (Fla. 3d DCA 2024) (citing *Gonzalez*, 125 So. 3d at 945).

### III.   Analysis

We have jurisdiction as all claims by the Estate against Coyote were resolved by the trial court's entry of final judgment against it. *See* Fla. R. App. P. 9.110(k); *First Specialty Ins. Co. v. Caliber One Indem. Co.*, 988 So. 2d 708, 711 n.2 (Fla. 2d DCA 2008); *Northwood SG, LLC v. Builder Fin. Corp.*, 76 So. 3d 3, 4 (Fla. 4th DCA 2011) (citing *S.L.T. Warehouse Co. v. Webb*, 304 So. 2d 97, 100 (Fla. 1974)). We review an

5

order granting summary judgment de novo. *Gonzalez*, 125 So. 3d at 944. Similarly, we review the issue of whether a state law is preempted by federal law de novo. *Vreeland v. Ferrer*, 71 So. 3d 70, 73 (Fla. 2011).

> In all preemption cases, the " 'ultimate touchstone' " for determining the scope of preemption is the purpose of Congress. *Medtronic*[*, Inc. v. Lohr,* 518 U.S. 470, 485 (1996)], (quoting *Retail Clerks Int'l. Ass'n. Local 1625 v. Schermerhorn*, 375 U.S. 96, 103 . . . (1963)). "As a result, any understanding of the scope of a pre-emption statute must rest primarily on 'a fair understanding of *congressional purpose.*' " *Medtronic*, 518 U.S. at 485–86 . . . (quoting *Cipollone* [*v. Liggett Grp., Inc.*, 505 U.S. 504, 530 n. 27 (1992))]. This exercise in statutory interpretation requires a court to "not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy" in determining whether Congress intended to preempt the state law at issue. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 51 . . . (1987) (internal quotations omitted).

*Joe Nagy Towing*, 101 So. 3d at 874. "It is therefore critical to ascertain the purposes and objectives of Congress, and whether the state law tort claims at issue 'stand as an obstacle' to those purposes and objectives." *R.J. Reynolds Tobacco Co. v. Marotta*, 214 So. 3d 590, 596 (Fla. 2017). This is because state laws may affect rates, routes, or services in "too tenuous, remote, or peripheral a manner" to be preempted. *See Rowe*, 552 U.S. at 375 (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 390 (1992)). In carrying out the analysis, "[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Ripple v. CBS Corp.*, 385 So. 3d 1021, 1027 (Fla. 2024) (alteration in original) (quoting *Conage v. United States*, 346 So. 3d 594, 598 (Fla. 2022)).

Courts are divided as to whether negligence claims against a broker are preempted by the FAAAA, and the Supreme Court has thus far

6

declined to resolve a circuit split on the issue. *Hawkins v. Milan Express, Inc.*, 735 F. Supp. 3d 933, 939-40 n.3 (E.D. Tenn. 2024); *see also Gauthier v. Hard to Stop LLC*, No. 22-10774, 2024 WL 3338944 (11th Cir. July 9, 2024), *cert. denied*, 145 S.Ct. 1062 (2025). But we align with the body of case law concluding that, while tort claims against a broker fall within the preemption language of the FAAAA, the safety exception saves those claims from preemption in the circumstances described in that exception. *See Kaipust v. Echo Glob. Logistics, Inc.*, No. 1-24-0530, 2025 WL 2374556, at *4-8 (Ill. App. Ct. Aug. 15, 2025); *see also Cox v. Total Quality Logistics, Inc.*, 142 F.4th 847, 854 (6th Cir. 2025); *Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016, 1030 (9th Cir. 2020), *cert. denied*, 142 S.Ct. 2866 (2022). Moreover, the safety exception is construed broadly. *See Miller*, 976 F.3d at 1026; *Cal. Tow Truck Ass'n v. City & County of S.F.*, 807 F.3d 1008, 1022 (9th Cir. 2015). And when genuine issues of fact remain in dispute and a party is not entitled to judgment as a matter of law, summary judgment is not properly entered. Fla. R. Civ. P. 1.510(a).

## A. Express Preemption

Before considering the safety exception to preemption, we first consider the scope of express preemption. "Express preemption exists where a federal statute explicitly preempts state law." *Charles v. S. Baptist Hosp. of Fla., Inc.*, 209 So. 3d 1199, 1212 (Fla. 2017) (quoting *W. Fla. Reg'l Med. Ctr., Inc. v. See*, 79 So. 3d 1, 15 (Fla. 2012)).

Notably, the Seventh, Ninth, and Eleventh Circuits agree that negligent hiring claims are expressly preempted by § 14501(c)(1) of the FAAAA because those claims are related to prices, routes, or services of brokers with respect to the transportation of property. *See Ye*, 74 F.4th at 458; *Aspen*, 65 F.4th at 1265-68; *Miller*, 976 F.3d at 1022, 1024.

That is because negligent hiring claims against brokers for their selection of motor carriers "would regulate brokers, not 'in their capacity as members of the public,' but in the performance of their core transportation-related services." *Aspen*, 65 F.4th at 1268 (quoting *Rowe*, 552 U.S. at 375).

As to the Estate's vicarious liability claim against Coyote, under Florida law, "[a] person whose liability is imputed based on the tortious acts of another is liable for the entire share of comparative responsibility assigned to the other." *Am. Home Assur. Co. v. Nat'l R.R. Passenger Corp.*, 908 So. 2d 459, 467 (Fla. 2005) (quoting Restatement (Third) of Torts: Apportionment of Liability § 13 (2000)). In essence, a vicarious liability claim places upon a party that is free of legal fault the negligence of another. *Id.* at 468. The FAAAA "embraces state laws 'having a connection with or reference to' . . . 'rates, routes, or services,' whether directly or indirectly." *Miller*, 976 F.3d at 1022 (alteration in original) (quoting *Dan's City Used Cars*, 569 U.S. at 260).

Thus, we agree with the trial court that the Estate's negligence and vicarious liability claims are expressly preempted because "enforcing [these] laws upon a broker. . . would have a significant direct impact upon the services rendered by a broker and hinder the objectives of the FAAAA." *Lee v. Golf Trans., Inc.*, No. 3:21-CV-01948, 2023 WL 7329523, at *13 (M.D. Pa. Nov. 7, 2023). We now turn to the FAAAA's safety exception to preemption.

### B.    The Safety Exception

The trial court concluded that the safety exception cannot save the Estate's claims against Coyote from preemption because "the safety exception does not apply to brokers." The trial court found that

8

negligence claims against a broker "simply [are] not 'with respect to motor vehicles.' " We disagree.

For the Estate's negligence and vicarious liability claims to fall within the FAAAA's safety exception to preemption, "(1) the negligence standard must constitute an exercise of Florida's 'safety regulatory authority,' and (2) that authority must have been exercised 'with respect to motor vehicles.' " *Aspen*, 65 F.4th at 1268 (quoting § 14501(c)(2)(A)). There is no dispute that the first prong of this test is satisfied. *See id.* at 1270 ("Florida's common law negligence standard, which allows claims against a broker based on negligent selection of a carrier, is 'genuinely responsive to safety concerns' and thus within Florida's 'safety regulatory authority.' "). But the parties have differing views as to whether the Estate's claims against Coyote are "with respect to motor vehicles." Coyote argues that "[t]he safety exception's application is limited to state safety regulations of motor carriers *having a direct connection* with motor vehicles." (Emphasis added.)

We conclude that while tort claims against a broker fall within the preemption language of the FAAAA, the safety exception exempts those claims from preemption if the facts support a finding of liability. *See, e.g., Kaipust*, 2025 WL 2374556, at *4-8; *Cox*, 142 F.4th at 853-58; *Miller*, 976 F.3d at 1030. We come to this determination recognizing

> (1) the general principle that "the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress[,]" [*Bertram v. Progressive Se. Ins. Co.*, No. 19-1478, 2021 WL 2955740, at *5 (W.D. La. July 14, 2021)] (citing *City of Columbus* [*v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 432 (2002)]; (2) the similar principle that courts have a "tendency . . . to construe the safety exception broadly[,]" *id.* (citing *VRC LLC* [*v. City of Dallas*, 460 F.3d 607, 612 (5th Cir. 2006)]); (3) the fact that the purpose of the FAAAA is to

9

"regulat[e] economic aspects of the trucking industry by, for example, enacting tariffs, price regulations, and other similar laws[,]" *id.* (quoting *Miller*, 976 F.3d at 1026); and (4) the fact that the purpose behind the Safety Exception is to "not restrict the States' existing power over 'safety[,]' " which "plainly includes the ability to regulate safety through common-law tort claims[,]" *id.* (first quoting *Ours Garage*, 536 U.S. at 439; and then quoting *Miller*, 976 F.3d at 1026).

*Gen. Sec. Nat'l Ins. Corp. v. Celi*, No. 23-1682, 2025 WL 1601024, at *10 (M.D. La. June 5, 2025) (first, fourth, fifth, seventh, eighth, ninth, and tenth alterations in original); *see also Arizona v. United States*, 567 U.S. 387, 400 (2012) ("In preemption analysis, courts should assume that 'the historic police powers of the States' are not superseded 'unless that was the clear and manifest purpose of Congress.' " (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)); *Miller*, 976 F. 3d at 1021.

In our view, the FAAAA's safety exception demonstrates Congress' intent to preserve the States' "broad power over safety." *Miller*, 976 F.3d at 1020. The Estate's negligence and vicarious liability claims have "the requisite 'connection with' motor vehicles because [they] arise[] out of a motor vehicle accident," *see id.*, and "fall squarely within the 'safety regulatory authority of a State with respect to motor vehicles,' " *see Crawford v. Move Freight Trucking, LLC*, No. 7:23-cv-433, 2024 WL 762377, at *8 (W.D. Va. Feb. 20, 2024) (quoting § 14501(c)(2)(A)). That is because "[s]tate law recognizes these tort claims in part to incentivize safe practices in the trucking industry" and preempting these claims "would undercut an important tool in the states' efforts to maintain reasonably safe roadways, a practice expressly shielded by the safety exclusion." *Id.*

We recognize that there is a circuit split as to whether negligence claims against a broker are preempted by the FAAAA and not saved by the safety exception. "But in the absence of controlling authority, th[is]

10

Court looks to the plain language of the safety exception, which does not require a 'direct' connection to motor vehicles to be applicable." *Hawkins*, 735 F. Supp. 3d at 940; *see also DeSantis v. Dream Defenders*, 389 So. 3d 413, 422 (Fla. 2024) ("The law consists not of what the Legislature 'appears to have intended,' but what the words of its duly enacted statutes, in their context, mean to the ordinary speakers of the language who elected it."); *Ripple*, 385 So. 3d at 1027 (Fla. 2024) ("[T]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." (quoting *Conage*, 346 So. 3d at 598)).

Relevant to our analysis, one court succinctly stated that "brokers *exist* to arrange for the carriage of goods *by motor vehicle*—to put motor vehicles on the roads." *Ruff v. Reliant Transp., Inc.*, 674 F. Supp. 3d 631, 635 (D. Neb. 2023). The court noted that "[a] direct connection to motor vehicles" seems to be more than the FAAAA requires and added that the exception applies when the direct connection appears "on the face of the relationship." *Id.* (citing 49 C.F.R. § 371.2).

We are not persuaded by the cases cited by Coyote and relied upon by the trial court and reject the suggestion that a broker can never be held liable in a negligence case under the FAAAA. This position simply does not give sufficient consideration to the safety exception. As one court has observed, "it is highly unlikely Congress intended to permit brokers to act as negligently as they see fit, with no redress for an injured party, without making this intent clear on the statute's face." *Kaipust*, 2025 WL 2374556, at *5.

Coyote points out that brokers are not explicitly named in the safety exception. But "it is clear from the plain language of . . . §

11

14501(c)(2)(A) that Congress did not purposefully omit certain parties to exclude them from the safety exception." *Id.* at *8. Instead, Congress "omitted *any reference* to *any parties* because the exception applies to the conduct of *anyone*, so long as such conduct falls under the 'safety regulatory authority of a State with respect to motor vehicles.' " *Id.*

A claim will survive preemption "[o]nly when a plaintiff can establish that the broker's conduct implicated the state's safety regulatory authority." *Id.* "[W]hen the record permits a negligence claim to survive a motion to dismiss or summary judgment, the [FAAAA] contains no provision from which we could conclude Congress intended nonetheless to indemnify the broker." *Id.* at *7.

## C. Genuine Issues of Material Fact

Although the trial court did not reach the merits of the Estate's claims, the first amended complaint sets forth facts that bring the safety exception to preemption into play. The Estate asserted that Coyote "selected, hired and/or worked in joint venture" with "a dangerous and incompetent motor carrier with a history of safety issues, violations of state and federal laws, regulations and industry safety standards, improperly double brokering loads, and operating clearly unsafe commercial motor vehicles and equipment." The Estate also alleged that Coyote "acted as, contracted for, and was listed on the bill of lading as the motor carrier of the Load, arranged for, controlled, and had the right to control all of the transportation of the Load in question, acted as the motor carrier of the Load, and then sub-brokered the Load" to the motor carrier.

Because factual and legal issues remain unresolved, the Estate correctly asserts that there is no alternative basis on which to affirm. Thus, remand is required for further proceedings. *See Gonzalez,* 125 So.

12

3d at 945, 946 (reversing order granting final summary judgment and remanding for further proceedings "[b]ecause the difference between a carrier and a broker is often blurry, [and] the carrier/broker inquiry is inherently fact-intensive and not well-suited to summary judgment"); *see also XPO Logistics, LLC v. Charles*, 394 So. 3d 206, 206 (Fla. 3d DCA 2024) (declining to reach the merits of a petition for writ of prohibition seeking to prevent a trial in a state-based tort case from occurring "[b]ecause the record reflect[ed] disputed material facts relevant to the operation of federal preemption" under the FAAAA (citing *Gonzalez*, 125 So. 3d at 945)).

## IV.   Conclusion

In summary, the trial court erred in determining as a matter of law that federal preemption precludes the Estate's claims.  The Estate's claims against Coyote arise under Florida's safety regulatory authority "with respect to motor vehicles" as provided for in the exception to preemption contained in § 14501(c)(1) of the FAAAA.  Because genuine issues of disputed fact remain for resolution, we reverse the final judgment and the order granting Coyote's motion for final summary judgment and remand for further proceedings.

Reversed and remanded.

VILLANTI and SMITH, JJ., Concur.

_____

Opinion subject to revision prior to official publication.

13