Filed 9/10/25; certified for publication 9/30/25 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CHRISTINA CASAREZ,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>IRIGOYEN FARMS, INC. et al.,<br><br>Defendants and Respondents. | F086901<br><br>(Super. Ct. No. 19CECG03758)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County. Jonathan M. Skiles, Judge.

Law Office of Kevin G. Little and Kevin Gerard Little for Plaintiff and Appellant.

Hugo Parker, Edward R. Hugo, Bina Ghanaat, and Alex G. Taheri for Defendant and Respondent Irigoyen Farms, Inc.

Frost Brown Todd, Kevin C. Schiferl, Stephanie V. McGowan; Murchison & Cumming, Kasey C. Townsend and Gina E. Och for Defendant and Respondent Walmart Inc.

-ooOoo-

Plaintiff Christina Casarez appeals from September 11, 2023 judgments of the Fresno County Superior Court entered after orders granting summary judgment in favor of defendants Irigoyen Farms, Inc. (Irigoyen Farms) and Walmart Inc. (Walmart). The superior court concluded Casarez's negligence claims were preempted by the Federal Aviation Administration Authorization Act of 1994 (Pub.L. No. 103-305 (Aug. 23, 1994) 108 Stat. 1569) (FAAAA). We agree and affirm the judgments.

## FACTUAL AND PROCEDURAL HISTORY

### I. Undisputed facts[1]

#### a. *Accident*

On the evening of September 27, 2019, Olivia Mendoza was driving westbound on Mountain View Avenue when a tractor trailer heading northbound on Clovis Avenue ran a stop sign and collided with her vehicle. Olivia[2] was pronounced dead at the scene. Before the accident, Andre Hill—the driver of the tractor trailer—picked up a load of produce from Irigoyen Farms for delivery to Walmart's distribution center in McCarran, Nevada. His "extreme fatigue" was deemed by law enforcement to have been a factor in the crash. Hill was subsequently charged with vehicular manslaughter.

#### b. *Additional background*

Irigoyen Farms, a family farm based in Selma, produces over 30 varieties of fresh vegetables and supplies fresh produce to its customers. One such purchaser is Walmart.

---

[1] This part is based on the separate statements in the record. (See Code Civ. Proc., § 437c, subd. (b)(1), (3); see also *North Coast Business Park v. Nielsen Construction Co.* (1993) 17 Cal.App.4th 22, 30–31 [" '[A]*ll* material facts must be set forth in the separate statement. "This is the Golden Rule of Summary Adjudication: if it is not set forth in the separate statement, *it does not exist*." ' "].) We also consider as part of the record evidence to which objections were made but overruled. (See Code Civ. Proc., § 437c, subd. (c).)

[2] To avoid confusion, we identify individuals who share the same surname by their first names. No disrespect is intended.

2.

Irigoyen Farms typically contracts with a freight broker to ship its produce. Prior to the aforementioned accident: (1) Irigoyen Farms contracted with Royal Violet Logistics, LLC (Royal Violet) to "arrange for the delivery of the subject load"; (2) Royal Violet contracted with SIO Logistics LLC (SIO) to "hire a motor carrier for the subject load"; (3) SIO contracted with Gold Coast Logistics Group (Gold Coast) "to act as the motor carrier of the subject load"; and (4) Gold Coast hired Hill as an independent contractor and provided him with the tractor trailer involved in the collision.

## II.     Operative complaint

Casarez—individually and on behalf of her daughter Olivia's estate—filed a lawsuit against Irigoyen Farms and Walmart, among others.[3] In her complaint, she raised three causes of action: (1) motor vehicle negligence; (2) general negligence; and (3) wrongful death. Casarez alleged Irigoyen Farms and/or Walmart owned or otherwise controlled the tractor trailer; employed and entrusted the tractor trailer to Hill; negligently failed to train and supervise Hill; and negligently failed to maintain and repair the tractor trailer.

Later, in appellant's opening brief, Casarez clarified she was suing Irigoyen Farms and Walmart "for *their* actions and *their* failures to comply with the industry standards applicable specifically *to them*, not vicariously for the acts of the motor carrier or broker, or for the broker's negligent hiring of the motor carrier." Specifically, she "sued Walmart because its onerous contractual requirements incentivized reckless conduct by motor carriers" and "sued Irigoyen Farms because, through its employees, it loaded its product

---

[3] Casarez joined Jaime Mendoza—Olivia's father—as a defendant under Code of Civil Procedure section 382. "A party who is joined in a wrongful death action as a defendant under [Code of Civil Procedure] section 382 is only nominally a defendant. In reality, he is a plaintiff [citations]." (*Estate of Kuebler v. Superior Court* (1978) 81 Cal.App.3d 500, 503–504.) Jaime filed a cross-complaint and opposed defendants' summary judgment motions, which likely explains why the record sometimes refers to multiple plaintiffs. Jaime is not a party to this appeal.

3.

on the truck driven by . . . Hill and sent him on his way despite actual, contemporaneous knowledge he had a long distance to travel, had to be there within just a few hours, yet was obviously already exhausted."

## III.    Summary judgment motions

In May 2023, Irigoyen Farms and Walmart each filed a motion for summary judgment.  Both argued—among other things—the FAAAA preempted Casarez's claims. In her opposition to these motions, Casarez asserted the FAAAA did not apply because (1) "the FAAAA only preempts state laws that relate to motor carriers, brokers, and freight forwarders" and "neither Walmart nor Irigoyen Farms is a motor carrier or a transportation broker"; and (2) "the FAAAA does not preempt state law personal injury claims" that are subject to its "safety regulation exception."  In support of the latter, Casarez cited *Miller v. C.H. Robinson Worldwide, Inc.* (9th Cir. 2020) 976 F.3d 1016 (*Miller*).

## IV.    Ruling

Following an August 9, 2023 hearing, the superior court adopted its tentative ruling, which granted defendants' motions for summary judgment.  The ruling read in part:

> "The [FAAAA] expressly preempts negligence claims against a broker and its hirer.  [Citation.]  [¶]  It is undisputed that the products onboard the truck were being shipped from the grower (Irigoyen Farms . . .) to the retailer (Walmart . . .).  [Citation.]  It is also undisputed that such a shipment is typically arranged through a freight broker.  [Citation.] Therefore, the burden shifts to plaintiffs to show that preemption does not apply.  [Citation.]

> "Plaintiffs rely on *Miller*[, *supra*,] 976 F.3d 1016 for the proposition that the FAAAA does not preempt state law personal injury claims under the safety regulation exception.  [Citation.]  *Miller*, however, is distinguishable because there the party asserting preemption was the broker that had specifically selected the transportation service.  [Citation.]  Here it is the grower and retailer.  Furthermore, the entity [in *Miller*] in the analogous remote role of the moving parties here was dismissed from the

proceeding altogether.  [Citation.]  In addition, *Miller*'s application of the safety [regulation] exception has recently been rejected in a case with near-identical facts.  [Citation.]  Consequently, plaintiffs have failed to meet their burden to show their claim is not preempted under federal law as to moving defendants Walmart and Irigoyen [Farms]."

## DISCUSSION

## I.    Overview of legal principles

a.  *Summary judgment law*

"A party may move for summary judgment in an action or proceeding if it is contended that the action has no merit or that there is no defense to the action or proceeding."  (Code Civ. Proc.,[4] § 437c, subd. (a)(1).)  Summary judgment "provide[s] courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*); see *Lee v. Marchetti* (1970) 4 Cal.App.3d 97, 99 [" 'The salient philosophy behind this procedural device is to provide a method for the prompt disposition of actions and proceedings which have no merit and in which there is no triable material issue of fact . . . .' " (italics omitted)].)

A motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  In determining if the papers show that there is no triable issue as to any material fact, the court shall consider all of the evidence set forth in the papers, except the evidence to which objections have been made and sustained by the court, and all inferences reasonably deducible from the evidence, except summary judgment shall not be granted by the court based on inferences reasonably deducible from

---

[4] Unless otherwise indicated, subsequent statutory citations refer to the Code of Civil Procedure.

the evidence if contradicted by other inferences or evidence that raise a triable issue as to any material fact." (§ 437c, subd. (c).)

A defendant seeking summary judgment bears an initial burden to produce evidence demonstrating either one or more elements of the cause of action cannot be established or there is a complete defense to that cause of action. (§ 437c, subd. (p)(2); *Aguilar*, *supra*, 25 Cal.4th at pp. 849–850, 854–855.) "The burden on a defendant moving for summary judgment based upon the assertion of an affirmative defense is heavier than the burden to show one or more elements of the plaintiff's cause of action cannot be established." (*Anderson v. Metalclad Insulation Corp.* (1999) 72 Cal.App.4th 284, 289.) "Instead of merely submitting evidence to negate a single element of the plaintiff's cause of action, . . . 'the defendant has the initial burden to show that undisputed facts support each element of the affirmative defense' [citations]." (*Ibid.*, italics omitted; see *Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 878–879 [preponderance of the evidence standard of proof].)

If the defendant makes a prima facie showing, then the burden of production "shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto." (§ 437c, subd. (p)(2).) Specifically, where the defendant raises an affirmative defense, "the burden shifts to the plaintiff to show there is one or more triable issues of material fact regarding the defense after the defendant meets the burden of establishing all the elements of the affirmative defense." (*Jessen v. Mentor Corp.* (2008) 158 Cal.App.4th 1480, 1484; see *Vahle v. Barwick* (2001) 93 Cal.App.4th 1323, 1328 ["The plaintiff need not produce any evidence until the defendant has established every element of his or her defense."].) "The plaintiff . . . shall not rely upon the allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to the cause of action or a defense thereto." (§ 437c, subd. (p)(2); accord, *Aguilar*, *supra*, 25 Cal.4th at p. 849.) "There is a triable issue of

6.

material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*, *supra*, at p. 850, fn. omitted.)

"[F]rom commencement to conclusion, the party moving for summary judgment bears the burden of persuasion[5] that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar*, *supra*, 25 Cal.4th at p. 850, fn. omitted.)

b. *Federal preemption*

"The supremacy clause of the United States Constitution establishes that federal law 'shall be the supreme law of the land . . . , any thing in the Constitution or laws of any state to the contrary notwithstanding.' [Citation.] Consequently, the supremacy clause vests Congress with the power to preempt state laws. 'Congress may exercise that power by enacting an express preemption provision, or courts may infer preemption under one or more of three implied preemption doctrines: conflict, obstacle, or field preemption.' [Citations.] Express preemption occurs when Congress defines the extent to which its enactments preempt state law. [Citation.] Conflict preemption is found when it is impossible to comply with both state and federal law simultaneously. [Citation.] Obstacle preemption occurs when state law stands as an obstacle to the full accomplishment and execution of congressional objectives. [Citation.] Field preemption applies when federal regulation is comprehensive and leaves no room for state regulation. [Citation.]" (*People ex rel. Harris v. Pac Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 777–778.)

---

[5] Whereas a burden of production entails only the presentation of evidence, a burden of persuasion entails the establishment of a requisite degree of belief by way of such evidence. (*Aguilar*, *supra*, 25 Cal.4th at p. 850.)

Where a plaintiff's claims are federally preempted, summary judgment is appropriate. (*Jessen v. Mentor Corp.*, *supra*, 158 Cal.App.4th at p. 1485; *Armstrong v. Optical Radiation Corp.* (1996) 50 Cal.App.4th 580, 584–585; *Scott v. CIBA Vision Corp.* (1995) 38 Cal.App.4th 307, 313.)

  c. *FAAAA*

Under the FAAAA, a state "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . , broker, or freight forwarder with respect to the transportation of property." (49 U.S.C. § 14501(c)(1); see *Scott v. CIBA Vision Corp.*, *supra*, 38 Cal.App.4th at p. 314 ["When Congress has considered the issue of preemption and has included in the enacted legislation a provision expressly addressing that issue, there is no need to engage in an analysis of implied preemption principles."].) The following words are explicitly defined by statute:

"The term 'motor carrier' means a person providing motor vehicle transportation for compensation." (49 U.S.C. § 13102(14).)

"The term 'broker' means a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." (49 U.S.C. § 13102(2).)

"The term 'freight forwarder' means a person holding itself out to the general public (other than as a pipeline, rail, motor, or water carrier) to provide transportation of property for compensation and in the ordinary course of its business— [¶] (A) assembles and consolidates, or provides for assembling or consolidating, shipments and performs or provides for break-bulk and distribution operations of the shipments; [¶] (B) assumes responsibility for the transportation from the place of receipt to the place of destination; and [¶] (C) uses for any part of the transportation a carrier subject to jurisdiction under this subtitle." (49 U.S.C. § 13102(8).)

"The term 'transportation' includes—  [¶]  (A) a motor vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, regardless of ownership or an agreement concerning use; and  [¶]  (B) services related to that movement, including arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and property."  (49 U.S.C. § 13102(23).)

On the other hand, the meanings of certain phrases have been established by the United States Supreme Court:

The phrase "law, regulation, or other provision having the force and effect of law" "comfortably" includes "state common-law rules."  (*Northwest, Inc. v. Ginsberg* (2014) 572 U.S. 273, 281–282, citing 49 U.S.C. § 41713(b)(1).)

The phrase "related to" "embraces state laws 'having a connection with or reference to' carrier ' "rates, routes, or services," ' whether directly or indirectly. [Citation.]"  (*Dan's City Used Cars, Inc. v. Pelkey* (2013) 569 U.S. 251, 260 (*Pelkey*); see *Morales v. Trans World Airlines, Inc.* (1992) 504 U.S. 374, 383 ["The ordinary meaning of ['relating to'] is a broad one . . . and the words thus express a broad pre-emptive purpose."].)

The phrase "with respect to" " 'massively limits the scope of preemption' ordered by the FAAAA.  [Citation.]"  (*Pelkey*, *supra*, 569 U.S. at p. 261, fn. omitted.)  "[F]or purposes of FAAAA preemption, it is not sufficient that a state law relates to the 'price, route, or service' of a motor carrier in any capacity; the law must also concern a motor carrier's 'transportation of property.'  [Citation.]"  (*Ibid*.)

The FAAAA "exempts certain measures from its preemptive scope . . . ."  (*Pelkey*, *supra*, 569 U.S. at p. 256.)  For instance, 49 United States Code section 14501(c)(2)(A) reads in part:

"[Paragraph (1)] shall not restrict *the safety regulatory authority of a State with respect to motor vehicles*, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization . . . ."  (Italics added.)

"The term 'motor vehicle' means a vehicle, machine, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway in transportation . . . ." (49 U.S.C. § 13102(16).)

## II.     Standard of review

We review de novo "the trial court's grant of summary judgment on purely legal issues such as federal preemption" (*Valencia v. SCIS Air Security Corp.* (2015) 241 Cal.App.4th 377, 383) as well as " '[q]uestions of statutory interpretation . . . and the applicability of a statutory standard to undisputed facts' " (*California State University, Fresno Assn., Inc. v. County of Fresno* (2017) 9 Cal.App.5th 250, 265 (*Cal. State Fresno*)).

## III.     Analysis

a.  *The FAAAA preempts plaintiff's negligence claims against defendants*

In granting the summary judgment motions, the superior court concluded Casarez's negligence claims were preempted by the FAAAA.  On appeal, Casarez contends the FAAAA does not apply for two reasons.  First, the preemption clause identifies "motor carrier[s], "broker[s], and "freight forwarder[s]" (49 U.S.C. § 14501(c)(1)), not "shippers" and "receivers" like Irigoyen Farms and Walmart, respectively.  Second, Irigoyen Farms and Walmart "are [being] sued for direct negligence rather than the negligence of others."  (Boldface & capitalization omitted.)  Neither contention is persuasive.

" 'In ascertaining the meaning of a statute, we look to the [legislative] intent . . . as expressed by the actual words of the statute' [citation], 'giving them a plain and

commonsense meaning' [citation]." (*Cal. State Fresno*, *supra*, 9 Cal.App.5th at p. 266.) " 'If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs.' [Citation.]" (*Ibid.*) Here, the express language of the FAAAA is unequivocal: a state "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . , broker, or freight forwarder with respect to the transportation of property." (49 U.S.C. § 14501(c)(1).) Nothing in the language suggests a beneficiary of the preemption clause must itself be a motor carrier, broker, or freight forwarder. (See, e.g., *Creagan v. Wal-Mart Transportation, LLC* (N.D. Ohio 2018) 354 F.Supp.3d 808, 813, fn. 6 [FAAAA preempted claim against shipper].) Nothing in the language suggests preemption is limited to claims of vicarious liability. Instead, the FAAAA applies so long as the claim "(1) derives from the enactment or enforcement of state law and (2) relates to [the] prices, routes, or services [of a motor carrier, broker, or freight forwarder] with respect to the transportation of property." (*People ex rel. Harris v. Pac Anchor Transportation, Inc.*, *supra*, 59 Cal.4th at p. 782.) " 'When statutory language is clear and unambiguous there is no need for construction, and we will not indulge in it.' [Citations.]" (*Cal. State Fresno*, *supra*, at p. 266.) " 'We will not speculate that [Congress] meant something other than what it said. Nor will we rewrite a statute to posit an unexpressed intent.' [Citations.]" (*Ibid.*)

Undisputed facts demonstrate Casarez's negligence claims against Irigoyen Farms and Walmart are derived from "law[s], regulation[s], or other provision[s] having the force and effect of law" (see *Northwest, Inc. v. Ginsberg*, *supra*, 572 U.S. at p. 282 ["It is routine to call common-law rules 'provisions.' "]) and ultimately deal with Hill's driving while en route to Walmart's distribution center to deliver Irigoyen's produce (see *Pelkey*, *supra*, 569 U.S. at p. 261 [claim must "concern a motor carrier's 'transportation of property' "]). Therefore, the FAAAA preempts these claims.

b.  *The FAAAA's safety exception does not apply in the instant case*

On appeal, Casarez reiterates the FAAAA's safety exception under 49 United States Code section 14501(c)(2)(A) exempts state law personal injury claims from preemption.  She primarily relies on *Miller*, *supra*, 976 F.3d 1016 for this proposition.  In that case, the plaintiff was seriously injured in a collision with a tractor trailer that was transporting goods for a warehouse club.  (*Miller*, *supra*, at p. 1020.)  He sued the freight broker that arranged for the transportation, alleging the broker "negligently selected an unsafe motor carrier."  (*Ibid.*)  The federal district court found the plaintiff's claim was preempted by the FAAAA and did not "fall within the exception for 'the safety regulatory authority of a State with respect to motor vehicles.' "  (*Miller*, at p. 1020.)  While the Ninth Circuit Court of Appeals agreed the claim was sufficiently "related to" broker services, which is within the ambit of the preemption clause (see *id.* at pp. 1021–1025), it concluded the district court "erred in holding that the safety exception does not apply" (*id.* at p. 1020).  Examining the phrase "with respect to motor vehicles" (49 U.S.C. § 14501(c)(2)(A)), the circuit court understood " 'with respect to' " as being synonymous with " 'relat[ed] to.' " (*Miller*, *supra*, at p. 1030.)  Hence, to successfully invoke the safety exception, a claim need only " ' "hav[e] a connection with" motor vehicles,' whether directly or indirectly.  [Citation.]" (*Ibid.*, fn. omitted.)  The Ninth Circuit held "negligence claims against brokers, to the extent that they arise out of motor vehicle accidents, have the requisite 'connection with' motor vehicles" and are covered by the safety exception.  (*Id.* at p. 1031.)

At the outset, we point out "[f]ederal decisions may be persuasive, but California courts are not bound by the decisions of the lower federal courts." (*Santa Ynez Band of Chumash Mission Indians v. Lexington Ins. Co.* (2023) 90 Cal.App.5th 1064, 1071, citing *People v. Bradley* (1969) 1 Cal.3d 80, 86; accord, *Raven v. Deukmejian* (1990) 52 Cal.3d 336, 352.)  We have no obligation to follow *Miller*.  Moreover, we find *Miller*'s rationale deficient.  First, the Ninth Circuit apparently believed the preemptive scope of the

FAAAA was first "tempered by 'the presumption that Congress does not intend to supplant state law,' particularly in areas of traditional state regulation." (*Miller*, *supra*, 976 F.3d at p. 1021.) However, "[i]f a statute 'contains an express pre-emption clause, our "task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." ' [Citations.]" (*Brown v. Mortensen* (2011) 51 Cal.4th 1052, 1060; accord, *Puerto Rico v. Franklin Cal. Tax-Free Trust* (2016) 579 U.S. 115, 125.) "The presumption against preemption does not apply when there is an express preemption clause . . . ." (*Assur. Wireless USA, L.P. v. Reynolds* (9th Cir. 2024) 100 F.4th 1024, 1032, fn. 4; see *R.J. Reynolds Tobacco Co. v. County of Los Angeles* (9th Cir. 2022) 29 F.4th 542, 553, fn. 6 [*Miller* mistakenly relied on presumption against preemption when evaluating express preemption clause].)

Second, by finding "with respect to" and "related to" interchangeable, the Ninth Circuit ignored relevant United States Supreme Court precedent that clearly distinguished between these phrases in the FAAAA context. As noted, with respect to 49 United States Code section 14501(c)(1), the high court construed "related to" more broadly and "with respect to" more restrictively. (See *ante*, at p. 9.) Tellingly, "with respect to" is utilized in the safety exception (49 U.S.C. § 14501(c)(2)), which immediately follows the preemption clause. "[I]t is a well-established rule of construction that when a word or phrase has been given a particular scope or meaning in one part or portion of a law it shall be given the same scope and meaning in other parts or portions of the law." (*Stillwell v. State Bar* (1946) 29 Cal.2d 119, 123; see *IBP, Inc. v. Alvarez* (2005) 546 U.S. 21, 34 ["[I]dentical words used in different parts of the same statute are generally presumed to have the same meaning."].) "It would be odd if, in two consecutive subsections of the Code, which use materially identical language, the same words were read to mean one thing in the first subsection but another in the second. All else being equal, we prefer a reading of the second that coheres with binding precedent as to the

13.

first." (*Hylton v. U.S. Atty. Gen.* (11th Cir. 2021) 992 F.3d 1154, 1159; accord, *Aspen American Insurance Co. v. Landstar Ranger* (11th Cir. 2023) 65 F.4th 1261, 1271 (*Aspen*).) Thus, "[j]ust as the phrase 'with respect to the transportation of property' 'massively limits' the preemption provision, we read the phrase 'with respect to motor vehicles' to impose a meaningful limit on the [safety] exception to the preemption provision." (*Aspen*, *supra*, 65 F.4th at p. 1271.)[6]

*Miller*'s expansive interpretation of "with respect to motor vehicles" encompasses both direct and indirect connections with motor vehicles (see *Miller*, *supra*, 976 F.3d at p. 1030), which—far from imposing a meaningful limit on the safety exception—enables the safety exception to swallow the preemption clause. As noted, the preemption clause applies to claims that derive from the enactment or enforcement of state law and relates to the prices, routes, or services of a motor carrier, broker, or freight forwarder with respect to the transportation of property. (See *ante*, at p. 11.) "Of course, every state law that relates to the prices, routes, or services of a motor carrier, broker who contracts with a motor carrier, or freight forwarder who 'uses . . . a [motor] carrier' [citation], will have at least an *indirect* relationship to motor vehicles—motor vehicles are how motor carriers move property from one place to another. [Citation.] Accordingly, if an indirect connection between a state law and a motor vehicle satisfied the safety exception, then the phrase 'with respect to motor vehicles' would have no meaningful operative effect." (*Aspen*, *supra*, 65 F.4th at p. 1271.) Furthermore, "[i]f an indirect connection to motor vehicles made a state law 'with respect to motor vehicles' for the purposes of the safety

---

**6** For this reason, we find unpersuasive *Cox v. Total Quality Logistics, Inc.* (6th Cir. 2025) 142 F.4th 847, a case Casarez's counsel highlighted at oral argument. In an opinion filed July 8, 2025, the Sixth Circuit Court of Appeals held the plaintiff's negligence claim was covered by the FAAAA's safety exception. (*Cox*, at p. 858.) In reaching this conclusion, the Sixth Circuit—akin to the Ninth Circuit in *Miller*—"read the ordinary meaning of 'with respect to' as synonymous with . . . 'relating to.' " (*Id.* at p. 857.)

exception, then Congress's inclusion of a separate exception to allow states to impose highway route controls and cargo limits would almost certainly be redundant because such controls and limits are indirectly related to motor vehicle safety, too." (*Id.* at p. 1272, italics omitted; see 49 U.S.C. § 14501(c)(2)(A).) " 'An interpretation that renders related provisions nugatory must be avoided [citation] . . . .' " (*Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 659; see *In re J. W.* (2002) 29 Cal.4th 200, 209 ["One principle assumes that every part of a statute serves a purpose and that nothing is superfluous."].) To "ensure that the phrase 'with respect to motor vehicles' has an operative effect" (*Aspen*, *supra*, at p. 1271) that comports with "[t]he canon against surplusage" (*Whitehead v. City of Oakland* (2025) 17 Cal.5th 735, 747, fn. 1), it must be construed as "requiring a direct connection between the state law and motor vehicles" (*Aspen*, *supra*, at p. 1271).

According to Casarez herself, she "sued Walmart because its onerous contractual requirements incentivized reckless conduct by motor carriers" and "sued Irigoyen Farms because, through its employees, it loaded its product on the truck driven by . . . Hill and sent him on his way despite actual, contemporaneous knowledge he had a long distance to travel, had to be there within just a few hours, yet was obviously already exhausted." These claims do not purport the tractor trailer itself was defective or other otherwise unsafe. Therefore, the FAAAA's safety exception does not apply here.[7]

---

[7] In light of our disposition, we need not address other arguments raised by the parties.

**DISPOSITION**

The September 11, 2023 judgments of the superior court are affirmed.  Costs are awarded to defendants and respondents Irigoyen Farms, Inc. and Walmart Inc.


DETJEN, Acting P. J.

WE CONCUR:


PEÑA, J.


DE SANTOS, J.

Filed 9/30/2025

<u>**CERTIFIED FOR PUBLICATION**</u>

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| CHRISTINA CASAREZ, | F086901 |
| Plaintiff and Appellant, | (Super. Ct. No. 19CECG03758) |
| v. | |
| IRIGOYEN FARMS, INC., et al., | **ORDER GRANTING REQUESTS FOR PUBLICATION** |
| Defendants and Respondents. | |

      As the nonpublished opinion filed on September 10, 2025, in the above entitled matter hereby meets the standards for publication specified in the California Rules of Court, rule 8.1105(c), it is ordered that the opinion be certified for publication in the Official Reports.


DETJEN, Acting P. J.



WE CONCUR:



PEÑA, J.



DE SANTOS, J.